Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Souther District District of New York_

_____ Division

| | | |
|---|---|---|
| Ariel Dan Barkai | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| George Mendez, Alice Laschett, Glenn Cummings, Ray | ) | |
| McCallugh, Jeff Wannamaker and 4 other John Doe | ) | |
| Clarkstown Police Officers & George Hoehmann | ) | |
| Clarkstown Supervisor | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names. Do not include addresses here.)* | | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Ariel D. Barkai |
| Address | 214 Hilltop Lane |

| | | |
|---|---|---|
| Upper Nyack | NY | 10960 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Rockland |
| Telephone Number | 917 806 5757 |
| E-Mail Address | ariel@otriad.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | George Mendez |
| Job or Title *(if known)* | Clarkstown Police Officer |
| Address | 20 Maple Ave |

| | | |
|---|---|---|
| New City | NY | 10956 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Rockland |
| Telephone Number | 845-639-5800 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Alice LaSchett |
| Job or Title *(if known)* | Sergeant Clarkstown Police |
| Address | 20 Maple Avenue |

| | | |
|---|---|---|
| New City | NY | 10956 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Rockland |
| Telephone Number | 845-639-5800 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3

| | |
|---|---|
| Name | Ray McCallugh |
| Job or Title *(if known)* | Chief of Police, Clarkstown |
| Address | 20 Maple Avenue |
| | New City     NY     10956 |
| | *City*     *State*     *Zip Code* |
| County | Rockland |
| Telephone Number | 845-639-5800 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Jeff Wannamaker |
| Job or Title *(if known)* | Captain. Clarkstown Police Department |
| Address | 20 Maple Avenue |
| | New City     NY     10956 |
| | *City*     *State*     *Zip Code* |
| County | Rockland |
| Telephone Number | 845-639-5800 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

First Ammendment Right to Free Speech; Fourth Ammendment Right Against Unreasonable Seizure (Unlawful Arrest); 5th and 14th Ammendment Right to Due Process and Equal Protection; 6th Ammendment Right to a Fair Trial

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

N/A

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

Please See Attched Marked "Section II-D"

## III.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

286 West Route 59th Street Nanuet NY 10954 and adjacent parking lot; And Clarkstown Justice Court, 20 Maple Avenue, New City, NY 10956

B.    What date and approximate time did the events giving rise to your claim(s) occur?

On 4/28/2020 at approximatelt 4PM and later on or about September 17th in Clarkstown Justice Court

C.    What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

Please See Attached Document Labeled "III-Section C"

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Please see attached document labeled "Section IV"

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Please See Attached Document Labeled "Section V"

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      04/29/2020    ( 2021 )

Signature of Plaintiff

Printed Name of Plaintiff    Ariel Barkai

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
| --- | --- | --- | --- |

Telephone Number

E-mail Address

## Additional Defendants:

Defendant 5

Glenn Cummings
Lieutenant, Clarkstown Police Department
20 Maple Avenue
New City NY 10956
Rockland County
845-639-5800

Defendant 6

George Hoehmann
Clarkstown Town Supervisor
20 Maple Avenue
New City, NY 10956
Rockland County
845 639 5800

Defendant 7
4 John Doe Clarkstown Police Officers
Clarkstown Police Department
20 Maple Avenue
New City NY 10956
Rockland County
845 639 5800

United States District Court
Southern District of New York

——————————————————————X

ARIEL BARKAI,

            Plaintiff,

    -vs-                                                Section 1983 Civil Suit

George Mendez
Clarkstown Police Officer
Alice LaSchett
Sergeant, Clarkstown Police Department
Glenn Cummings
Lieutenant, Clarkstown Police Department
Ray McCallugh
Clarkstown Chief of Police
Jeff Wannamaker
Captain, Clarkstown Police Department
George Hoehmann
Clarkstown Town Supervisor
And Other John Doe Clarkstown Police Officers

                  Defendants.

——————————————————————X


TO THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK:

Please accept the following addendum to the Section 1983 Civil Suit Standard Form Available through the Courts for the purpose of filing a "Pro Se" Section 1983 Suit in the aforementioned case.


## II – D:  Defendants Actions Under Color of Law

i)      **NY Mental Hygiene Law 9.41** - Any peace officer, when acting pursuant to his special duties, or police officer who is a member of the state police or of an authorized police department or force or of a sheriff's department may take into custody any person who appears to be mentally ill *and is conducting himself in a manner which is likely to result in serious harm to himself or others. "Likelihood to result in serious harm" shall mean (1) substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or (2) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.* Such officer may direct the removal of such person or remove him to any hospital specified in subdivision (a) of section 9.39 or, pending his examination or admission to any such hospital, temporarily detain any such person in another safe and comfortable place, in which event, such officer shall immediately notify the director of community services or, if there be none, the health officer of the city or county of such action.

ii)    NY Penal Law § 210.15. A person is guilty of perjury in the first degree when he swears falsely and when his false statement (a) consists of testimony, and (b) is material to the action, proceeding or matter in which it is made. Perjury in the first degree is a class D felony.

## III - SECTION C:

1 – On 4/28/2020 at approximately 4PM I was driving east on Route 59 in Nanuet having just exited the NY State Thruway. While on the Thruway I had missed a call from an attorney whom I had been desperately trying to contact since the wrongful death of my late mother, Dr. Eileen Barkai of Blessed Memory, who died in Montefiore Nyack Hospital on 1/27/20 in Nyack NY when she was administered 50 mcg of a drug called Esmolol in an off label procedure that the studies it was based off of called for 5 mcg. She died right in front of me and because I complained to the hospital about her death and the nurse that administered the drug that killed her, the hospital violated my rights along with the Orangetown Police and the Rockland District Attorney's Office and charged me with two counts of Second Degree Harassment. The charges were later dismissed at arraignment because in NY State a person has the right to complain to the hospital where his mother died and has the right, under law according to the NY State Patients Bill of Rights Article 19 to do so without fear of retaliation. Instead, I was charged during my mourning period while suffering from the trauma of helplessly watching my beloved late mother die in front of me and then having to deal with all the ramifications of the Covid 19 Pandemic alone while trying to save my business and my home. As such, speaking to the lawyer at that time for me seemed like an emergency call so I tried calling him back once I got off the Thruway and was in the left lane pulling into the adjacent Taco Bell parking lot to do so.

2 – When I pulled into the parking lot I immediately noticed I was being stopped by a Clarkstown Police mobile unit. I pulled over without incident to a safe spot in the parking lot, turned off the engine and kept my hands in plain sight. Officer George Mendez got out of his car, and without wearing a mask, at the height of the pandemic which was at the time decimating our state and later the country and the world Mendez exited his unit without a protective mask in direct violation of the directives of his commander and chief, Governor Andrew Cuomo, who put in place over riding health laws and restrictions and ordinances that superseded in place individual rights requiring all people to wear masks in public when they could not maintain a safe social distance of 6 feet.

3 – I spoke to Mendez through my window and the entire call was recorded. I explained to him my situation; about the death of my late mother; about the false charges against me and about the severe damage it had done to my life in hopes he might forgo issuing me a ticket because I was literally running out of money (this was months before the Department of Labor, which had "collapsed" according to the Governor himself, was able to process my UI claim). I was hoping he might give me a break because in fact I had pulled into a parking lot to make the call and in fact in the middle of a pandemic given my loss and precarious situation the call did in fact for me constitute an emergency. Again, the entire discussion was recorded.

4 – Then shockingly and inexplicably with gross negligence and no consideration of my health and well being George Mendez walked right up to me without a mask and took my drivers license and went back to his car. I remained silent. He returned, again, with no mask, in the middle of a pandemic, again in direct violation of the directives of his ultimate commander and chief, Governor Andrew Cuomo and issued me a ticket. Apparently for Mendez, in spite of

everything I told him about the loss of my mother, the subsequent damage to my business, my precarious economic situation and the false charges I was fighting when I should have been left alone by "The People of The State of New York" to mourn my late mother in peace and the emotional and psychological trauma of going through this alone due to the isolation of the pandemic, Mendez thought it was more important to give me a ticket and while this is his right, he did so while himself violating a direct order and putting my life at substantial risk because, again, according to the Governor of the State of New York who on that day and previous days in press conferences, based on all the facts we knew at the time from the best state wide and national experts on public health, "you can literally kill someone by not wearing a mask". Of note was that Mendez did prove my rights were violated by the "people of the state of New York" when he confirmed that when investigating civil complaints "You have to investigate both sides" (Mistretta 2nd Circuit) thus proving the undue strain I was under during my mourning period was a direct result of the malicious actions of "the people of the State of New York" in whose name the Rockland DA derives its authority and in whose name charges were brought against me for lawfully complaining about the death of my beloved late mother.

5 – For George Mendez however none of this mattered. Following procedures; respecting and looking after my health and well being and not putting my life at risk were meaningless for Mendez. All that mattered was handing me a ticket, damn the torpedo's.

6 – Mendez handed me the ticket and I became visibly upset. I started telling him "what the hell are you doing? This ticket is so important that you are willing to risk my life? I don't know where you have been or who you have been in contact with." It bears mentioning that I had just months before buried my mother who went into the hospital when some microscopic organism entered her system and I watched her go from a healthy woman to a fighting for her life on a respirator in a matter of days. I was extremely paranoid about corona virus because I had watched my mother die and at that time and even today I was all alone and if I got sick there would be nobody to watch out for me so I was in full survival mode and completely socially isolated since returning from Israel on April 8th. In fact up until that time Mendez was the only person I had come into contact with since my return with a few exceptions such as trips to Shop Rite and when I was issued the criminal charges against me in my home.

7 – As I complained to Mendez he did not care. He got in his car and drove away. He did not, as a peace officer, see anything unusual in my behavior that would make him think I constituted "a substantial risk to myself or anyone else" even though we were engaged in essentially a face to face encounter, and correctly so because I did not pose a threat to myself or anyone else. I was simply upset at his hubris and lack of regard for my health and well-being and was exercising my first amendment right to complain about it.

8 – After Mendez drove away, I called the Clarkstown Police Department to complain to the police about the police. I was driving through the take away at the Taco Bell and after receiving my order, drove to the adjacent empty parking lot where I was totally alone and could not in any way constitute a threat to anyone because quite frankly, there was nobody there besides me and my tacos.

9 – I spoke to Sergeant Alice LaSchett and told her I wanted to file a civilian complaint against Mendez. I was extremely upset and extremely animated in exercising my first amendment rights but AT NO TIME did I threaten myself or anyone else. I was simply calling to express my gross displeasure at the fact that Mendez would dare put my life at risk during a global pandemic by approaching me by less than 6 feet on two occasions without a mask when all he had to do was put a mask on. "It's a small ask – wear a mask!" That is what the State asks of its citizens and in fact mandates and businesses and services including this Court can refuse service to someone

for non compliance but for whatever reason to George Mendez this did not matter because George Mendez believed the law did not apply to him and my health and well being were completely irrelevant in his eyes.

10 – During my call with LaSchett that was recorded and can be played for this Court at its request, I told LaSchett "He could have killed me. He might as well have stuck a gun in my mouth".

11 – This was not a threat. I was speaking in hyperbole, which is protected free speech to make the point that George Mendez was essentially playing Russian roulette with my life. The "He could have killed me" was a direct quote of the Governor of the State of New York who on that day and prior and subsequent days literally said in multiple press conferences "You can literally kill someone by not wearing a mask".

12 – LaSchett heard the words "gun in my mouth" and without attempting to clarify what she thought she heard by asking me "I am sorry, did you just say you have a gun in your mouth" went ahead and dispatched 5 mobile units to the empty parking lot sent 5 poorly trained armed men with no body cameras or dashboard cameras to a scene alerting the armed men that I was sitting there alone with a gun in my mouth.

13 – LaSchett may claim it was an honest misunderstanding but there are no honest mistakes when you place someone's life at risk and are given the authority to do so. She may have well claimed she thought she was "reaching for her Taser and not her gun" as in the case in Brooklyn Park, MN. A reasonable and well trained police officer, or any professional for that matter would have asked for clarification before dispatching armed men to a remote location claiming there was an individual there with a gun. Had I not maintained discipline when the officers arrived, dragging me from my car and had I, for example reached for a tin foil wrapped burrito I could have easily been murdered and with no police body cameras or dashboard cameras nobody would have ever known why I was killed and given the circumstances of the Clarkstown Police Departments handling of this incident and my subsequent complaint and their inaction, there poses a grave risk to the community that this can easily happen to someone else no less than we see it happening almost daily throughout these United States.

14 – When the Officers arrived at the scene, as stated, I maintained discipline. I put my phone down and my hands on the wheel. The police came and dragged me from my car. There actions were may have seemed reasonable given the false intelligence they received from their General HQ but when they removed me from my car, they threw me against the front of my car, physically manhandling me though I complied with their directives, frisked me and placed me in handcuffs. At no time did I resist. Even here, several officers were not wearing masks putting my life further at danger by multiplying my contact with potential virus spreaders.

15 – According to the police report itself, after I was removed from my vehicle my persons and vehicle were searched. With the exception of three tacos on the passenger seat, the officers found no gun or any other illegal paraphernalia that would lend them to believe I was engaged in any activity that would give rise to probable cause that I posed "a substantial risk of harm to myself or anyone else" as is the burden to deprive someone of their liberty under said NY State Hygiene laws. At that point, based on Fisher V Harden (5th District) and other subsequent rulings in Federal District Court including the Second Circuit, a reasonable police officer should have realized that it was not me who posed a "substantial risk to myself" (I could not have posed a risk to anyone else as there was nobody within 100 feet of me at least) and instead it was the call itself which should have come in to question and recognized that the police had zero grounds for holding me in handcuffs and executing an arrest. In fact, any claim of "Officer safety" is patently false because there were five armed men and all I had

were tacos and since I never resisted and complied with their directives any reasonable officer would have recognized that I posed no threat and that holding me with no good cause shown was a direct violation of my Fourth Amendment rights.

16 – The officers kept me in handcuffs for at least 30 minutes including in the back of a police cruiser with the windows up as if purposely attempting to suffocate me and denying my basic humanity when I had broken no laws or done anything that would require me being corralled like a common criminal or sub-human. There was a young officer there who reminded me that he had been at my house a few months prior when a similar false claim was made against me because while I was obviously extremely emotional and in fact depressed and rightfully so having just buried my mother yet AT NO TIME did I ever make suicidal threats against myself or threats against anybody else in this community including the hospital whom I still hold culpable for the death of my mother in matters still under investigation by the New York State Department of Health that may themselves come before this Court in a separate suit.

17 – This officer while he thought he was being helpful failed act reasonably and to speak up on my behalf to inform his fellow officers that the last time a similar event happened he was there when I spoke to the Behavioral Health Response Team and trained professionals ascertained that I did not in fact meet the burden laid out in NY Hygiene Law that would allow for my involuntary surrender of my inalienable rights protected by The United States Constitution. Rather than speaking up, like the three officers in Minnesota V Chauvin, this officer stood by and watched as his colleagues held me in handcuffs and isolated me in a cruiser with the doors closed windows up and no air condition depriving me of my rights under color of law with no probable cause which would be required for them to execute an arrest under these laws as case law holds. It harkens the quote "all it takes for evil to triumph over good is for good men to stand aside and do nothing". Essentially I was being arrested for no other reason than that I dared to complain to the police about the police and during that complaint a Sergeant completely misunderstood what I had said and at no time attempted to clarify the point before having me dragged from my car, handcuffed and thrown in a cruiser in what essentially amounts to an extra judicial retaliatory illegal arrest in violation of my protected and clearly established Fourth Amendment rights.

18 – In the police report for this incident it states they held me in handcuffs for over 30 minutes while they tried to track down one social worker from the Behavioral Health Response Team but were unsuccessful. When 5 police officers can respond to a false flag alert of a man falsely alleged to have a gun in his mouth and those five poorly trained officers can not find one social worker or psychologist this shows that the Town Of Clarkstown has too many cops and not enough mental health professionals and that is why I have named George Hoehmann as a party to this suit as well because ultimately he is responsible for resource allocation of this community where my family has lived since 1974 and the allocation of its tax dollars (see equitable relief requests).

19 – Further, these police officers, some of the best-paid police in the United States did not, any of them, have body cameras or dashboard cameras. If they did the truth would be told that AT NO TIME did I not comply with their directives and that once the police ascertained I had no gun as was alleged they could have and should have respected my right to liberty and removed the handcuffs as they had ZERO grounds to detain me and that my complaint was a direct exercise of my right to Free Speech and immediately ceased from holding me handcuffed like a criminal when in fact I broke absolutely no law and they had ZERO probable cause for executing an arrest in the first place. The fact that Mendez drove away in the first place after handing me the ticket further strengthens my argument as he in a face-to-face encounter determined I posed no risk to myself or anyone else and hence he drove away. The fact that LaSchett misunderstood what I said does not give rise to violating my right to liberty and freedom from illegal seizure. To quote the Dean of the Albany Business School where I did my undergraduate degree in Finance "lack of planning on your behalf does not constitute an emergency on my behalf" or again put another way, just because LaSchett thought she heard me say

one thing which was proven false by the officers on the scene does not constitute probable cause for an arrest and the police officers acted in a manner that a similar reasonable officer would not have acted (again Fisher v Harden).

20 – When the officers finally waited too long and could not find a BHRT professional, rather than releasing me, which they should have done because they had no probable cause to execute an arrest, they took me without my consent to Good Samaritan Hospital to a Psyche Ward Holding Cell where after two hours it was determined that I was not a risk to anyone and I was released. I would later be billed several thousand dollars in what amounted to my being Shanghaied and it was not until the NY State Attorney General stepped in that the hospital reversed the charges which were clearly fraudulent. If this sort of illegal action is allowed to happen we can easily find ourselves in a situation where a hospital can literally pay a bounty to the police to bring people in off the street for whatever reason they so choose for the hospital to then bill that person or its insurance for it. This would not be the first time such a thing has happened and that is why I believe it is important that this Court allow this case to go before a Jury for a Jury to decide as to the materially facts in dispute for this Court to set standards for the execution of deprivation of a citizens liberty by the implementation of this far reaching law which was ostensibly put in place to protect vulnerable members of our community but which clearly, as in my case, has the potential to be used as a cudgel to silence dissent when someone dares complain to the police about alleged police misconduct as I had lawfully done when calling the Clarkstown Police in the first place.

21- After I was released, in a state of sheer panic and trauma after what I felt like was a literal state sponsored kidnapping, I called LaSchett and thanked her because I was so frightened that this could happen again and I wanted to do whatever it took, having watched my mother die, having been charged with a crime for lawfully complaining about it and now having been dragged from my car for daring to complain to the police, to protect myself as I was alone and isolated and in deep suffering and mourning, but again, I posed no risk to myself or anyone else and AT NO TIME did I threaten myself or anyone else. I was merely exercising my First Amendment rights speaking up about the death of my beloved late mother and later Mendez negligent actions and instead I was treated like a criminal rather than being protected in violation of my right to equal protection.

22 – I than filed a civilian complaint into the incident but when contacted by Lieutenant Chernick I told him I appreciated his reaching out to me and just his action of reaching out made me consider the matter closed because I assumed they would force their officers to comply with the law and to wear a mask and I really did not want anymore problems with the police. But that never happened.

23 – When this matter went to trial in the issue related to my operating a hand held device while driving a motor vehicle and in the police report itself, Officer George Mendez on a sworn deposition and under oath in a court of law perjured himself which is illegal under NY State Law and by doing so violated my ability to have a fair trial and it was this action for which I subsequently filed criminal charges under the instructions of Judge David Ascher, Clarkstown Justice, to whom I moved for charges to be brought and who told me this was a matter for police investigation. So I press charges against Mendez for perjury and nothing ever came of it.

24 - To wit, Officer George Mendez wrote in his sworn deposition (**Appendix A**) and stated under sworn testimony in Clarkstown Justice Court "At no time did I approach PI Barkai in less than 6 feet". He stated this because in an admission that he was not in fact wearing a mask and by doing so he was breaking the law set forth by the Governor of the State of NY as a mental health emergency regulation while given the authority to enforce the law he himself felt did not apply to him and by doing so posed a substantial risk to my health and well being.

25 – You see it is against the laws of physical nature that Mendez could dare claim he never approached me by less than 6 feet. When in a seated position, the distance between my nose and my

fingers outstretched in 28 inches. A NY State Drivers license is less than 3 inches and when two people holding that license at equal ends would a lot for one inch of space between. Since Mendez is significantly shorter than me the distance from his nose to his fingers outstretched by laws of nature must be less than 28 inches. 28 inches plus 28 inches plus one inch is 57 inches. In the best case Mendez was at least 57 inches or 4.75 feet close to me which is significantly closer or at least 20% closer than he claimed negating any "rounding error is estimate" for a police officer who put himself out there as an expert witness with 13 years experience and being a graduate of the NYC Police Academy. Therefore the only conclusion that can be made is George Mendez knowingly and willingly perjured himself on his police report and under sworn testimony in a Court of Law and by doing so denied me equal protection under the law and the right to a fair trial. It also proves beyond question that my complaint to Sergeant LaSchett was 100 percent valid and LaSchett was duty bound under her oath to uphold the law to accept my complaint rather than trying to turn me into the PI by erroneously and falsely claiming that I threatened harm to myself when I clearly did not. Again, the call was recorded. By Mendez claiming "at not time did (I) approach PI by less than 6 feet" Mendez might as well have given sworn testimony that the earth was flat. Again, it defies the laws of physical science and making this claim under oath defies the laws of the State of New York.

26 – On October 15th, 2020 I cane to the Clarkstown Police HQ and filed a sworn criminal complaint with Sergeant Christopher Bax as Judge Ascher had informed to do. After 6 months passed no investigation ever transpired even though I swore under penalty of perjury as to the facts of this case coming forward as a crime victim. I tried for months to contact Captain Wannamaker and Chief Ray McCallugh and they refused to intervene or to discuss this matter with me in anyway. It appears that for the Clarkstown Police Department they can only act against me when they want to abuse their authority to violate my inalienable rights but when I approach them as the victim of a crime they can not be bothered. This is a clear violation of equal protection and due process and a violation of the social contract between the police and the community they serve where the citizen has a duty to pay municipal taxes to fund the police and follow the law and the police have a sworn duty to uphold the rights of the citizenry even when the alleged violator is one of their own. To this end it bears noting that the Clarkstown Police, in addition to having no body cameras, no dashboard cameras, too many police and not even mental health professionals also have no Civilian Complaint Review Board such that when a citizen complains against the police he is denied due process and the ability to have his grievance heard before his peers but rather to be judged by fellow police officers who in this instance failed to even investigate my complaints as they do not want to turn against their own.

27 – I filed a Notice of Claim (**Appendix B**) and received no reply yet still attempted to communicate directly with Wannamaker and McCallugh even calling "100 times" and received no response. Finally I was called by Lieutenant Cummings who replied to a further complaint about officers who came to my house on March 11th 2021 when I called 911 because I was trying to quit smoking and thought I was having a stroke and along with EMS there were two officers who still could not find the discipline to uphold the law and protect, if not themselves, me, and wear a mask – "it's a small ask!". Instead Cummings tried to white wash the investigation by sending me some document from the NY State DOH on Officer Protocol for protecting themselves during a pandemic and wearing a mask but never spoke to an officers obligation to protect other people which in fact the Governor himself in June spoke directly to in issues related to police non compliance with his mask mandate. Again, the Clarkstown Police, rather than addressing the issue still believe the law does not apply equally to them.

28 – Having received no reply to my lawful notice even going so far as attempting to have the Town Supervisor intervene as clearly he must and should have sway into budgeting issues and the creation of a Civilian Complaint Review Board and having received no response and having passed the thirty days I have been left no choice but to file this deprivation of rights suit to assure my rights are upheld under law; that the Clarkstown Police and the town itself be held accountable and in compliance and to assure that what happened to me will not ever happen to anyone else in this community or state or

Federal District and beyond because quite frankly, if left unchecked some very well may wind up dead.

**SECTION IV:**

As a result of all the trauma I have sustained as a result not just of my mothers passing but of the fraud upon my life and the Court of being charged in the name of the "People of the State of NY" for launching a lawful complaint into the death of my mother which is expressly protected by NY State Law and then having been twice (the second incident will be brought before this Court in a separate filing) been wrongfully deprived of my liberty in what I believe is a form of state sanctioned kidnapping violating clearly established Fourth Amendment Law, I have been in therapy which my sister, Dr. Ayelet Barkai, a Harvard Medical School faculty Psychiatrist is paying for because as a result of the false charges against me that were later dismissed outright (**Exhibit C**) I was denied an Economic Injury Disaster Loan from the SBA and at a time of great personal tragedy and suffering I was turned into "PI Barkai" rather than having the police act to defend and protect my rights and my life unraveled in the pandemic. As a result of all of this I have completely lost all faith in policing and society as a whole; my feeling of safety and security in the community where my family has lived since 1974 has been shattered, and I am in the process of selling my home and fleeing this community for higher ground to a place where I can once again feel safe that if I am alone in my home or my car and dare complain to the police I will not be dragged from my home or my car as retribution for daring to open my mouth and exercising my first amendment rights that an agency who derives its authority from law and its budget from my tax dollars can turn against me and deprive me of my liberty as a retribution for daring to complain against one of their own for risking my life in the first place. My faith has quite frankly been shattered and I no longer feel safe in the Town of Clarkstown or the County of Rockland where my family has lived since 1974 where poorly trained armed men with out body cameras or dash board cameras which have become a form of national standard throughout these United States operate with impunity protected by their commanding officers without any civilian oversight. And further since this has already happened twice without any oversight or investigation and since I now clearly appear as a target for the Clarkstown Police, all they have to do is pull me over with no eyewitness, no body cameras and no dashboard cameras and claim I threatened harm to myself or someone else and deprive me of my liberty under false charges with no due process in manipulation of NY Mental Hygiene Law and for me that is a risk I can ill afford and as such, as stated, must flee this community.

**SECTION V:**

**I seek the following relief:**

1.) First and foremost I am seeking equitable relief a Judicial injunction compelling the Clarkstown Police Department, one of the highest paying police departments in the United States, to allocate money from its budget to immediately place body cameras on all 81 of their patrol officers as well as dashboard cameras on all mobile units and that usage and recall of film standards be in line with the minimum standards of the New York City Police Department, where many of the Clarkstown Police Officers including George Mendez received their training. It is a violation of equal protection for citizens of New York City to be protected from illegal police conduct by the implementation of cameras while citizens such as myself in Clarkstown be denied access to such exculpatory evidence when in fact Clarkstown has the budget capability to pay its officers in many cases as much as 100 to 150% or more than NYPD officers. The town of Clarkstown and its police clearly has the capability. I am asking this Court to force them through injunction to get it done.

2.) That this Court further compel through equitable relief in the form of an injunction that the Town of Clarkstown and the Clarkstown Police be forced to impanel an independent Civilian Complaint Review Board so that when citizens like myself come to the police to complain about the police the merits of the complaint go before an independent review board and not to ask police to police the police when the facts in this case prove they have no motivation to do so.

3.) As stated, when 5 untrained police officers can show up for a mental hygiene allegation yet these 5 police officers are unable to find one trained sociologist or psychologist it clearly shows the town of Clarkstown has too many police and not enough social workers even in the face of an "unprecedented mental health crisis". When some of these officers are paid in excess of $200,000 or more it further shows that the Town of Clarkstown and its police have the budgetary capability to hire social workers and therapists so police do not have to respond to alleged hygiene calls they are ill equipped and not trained to deal with (again, when all you have is a hammer every problem looks like a nail) yet lack the motivation to do so lest it impede on their own enrichment at the tax payers expense. As such I am seeking equitable relief from this Court in the form of an injunction compelling the Town of Clarkstown under Supervisor George Hoehmann to find a way and as quickly as possible to HIRE MORE MENTAL HEALTH WORKERS whose job it will be and should be to handle mental health allegations rather than dispatching ill trained armed men to deal with such situations and that this be done with expediency before the inevitable disaster which could have happened to me befalls this community and some poor family winds up burying a loved one needlessly on a mental hygiene call gone terribly wrong and done in darkness with no body cameras or dashboard cameras to hold people accountable for their action.

4.) Actual damages for emotional pain and suffering, costs associated with the crippling fear of not feeling safe in my home and needing to sell my home to flee this community and costs of psychiatric treatment in the amount of $100,000. Psychiatric treatment alone is costing my family at least $400/hour 52 weeks a year and this will go on for years. Also the hours and days I have spent having to fight this and the sleepless nights I have endured when all the police needed to do was hold a fair investigation needs to be relieved. I believe the Clarkstown Police and the Town of Clarkstown, for being the source of a part of the injustice done against me and my daring to exercise my first amendment rights to complain about the death of my mother and later the conduct of George Mendez for risking my life in a pandemic be held accountable for a portion of these damages and $100,000 seems a fair amount given the gravity of the allegations, the connectivity to the lose of my late mother and all the pain and suffering I have been forced to endure on top of the indescribable continuous pain from the fear I have endured on top of the anguish of the loss of my mother all forcing me to leave and when measured against what the officers involve are paid by my tax dollars as well. It is a reasonable ask. I only wanted to be left alone to mourn and be treated fairly and instead I was dragged from my car and stuck in a hospital which is the last place anyone would feel safe at the height of a global pandemic.

3.) For all of the above reasons above and to send a message loud and clear that we are all equal under the law and no person should have his right to not be illegally detained on a whim with no evidence and no recourse I am asking that this Court assess punitive damages of $400,000 (four times compensatory damages) or any amount that this Court see just and fair to remind the Clarkstown Police from where they derive their authority and to remind them that we are all equal before the law.